FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 JAN 20  PM 3:58

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EVANS INDUSTRIES, INC. | * | C.A. NO. 01-0051 |
|     PLAINTIFF | * | |
| | * | SECT. "K" (JUDGE DUVAL) |
| | * | |
| VERSUS | * | |
| | * | MAGISTRATE 1 (SHUSHAN) |
| INTERNATIONAL BUSINESS | * | |
| MACHINES CORPORATION, | * | |
| IBM CREDIT CORPORATION, AND | * | |
| J.D. EDWARDS WORLD SOLUTIONS | * | |
| COMPANY | * | |
|     DEFENDANTS | * | |

* * * * * * * * * * * * * * * * * * * * * * * **

## MEMORANDUM OF J.D. EDWARDS, INC. IN OPPOSITION TO MOTION OF EVANS INDUSTRIES, INC. TO CONFIRM ARBITRATION AWARD AND ENTER JUDGMENT THEREON

**May It Please The Court:**

The subject Motion for Confirmation of Arbitration Award and Entry of Judgment brought by Evans sets forth in two paragraphs at least two specific reasons why it should presently be denied:

11.

On December 17, 2003, the AAA ... issued an award in favor of Evans and against JDE in the amount of $1,865,000 ... .

12.

Since the arbitration award was issued, JDE ... has threatened to file a motion with this Court to vacate the award ... .

Evans' Motion, ¶¶ 11, 12.

9 U.S.C. § 12 pertaining to "[n]otice of motions to vacate or modify" an arbitration award, provides, pertinently, as follows:

> Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three (3) months after the award is filed or delivered. ... For the purposes of the motion any judge who might make an order to stay the proceedings in an action brought in the same court may make an order to be served with the notice of motion, staying the proceedings of the adverse party to enforce the award.

Most of Evans' Memorandum in Support is devoted to an argument of why Edwards should fail in any future effort to have the award overturned; however, this argument is clearly premature and is nothing more than a mistaken effort by Evans to "put the cart before the horse." The "bottom line" is that Evans' own motion acknowledges Evans' awareness of Edwards' intention to seek to have the subject award vacated; and, as a matter of law, Edwards has at least ninety (90) days from December 17, 2003, to notice its intention, if any, to have the award vacated, and to seek a stay of all further proceedings pending resolution of that motion. 9 U.S.C. § 12, *supra*. See also <u>Intern Union of Operating Engineers v. Murphy Co.</u>, 82 F.3d 185, 188 (7 Cir. 1996); <u>Domino Group v. Charley Parker Memorial Foundation</u>, 985 F.2d 417, 419-20 (8 Cir. 1993).

The only reason Edwards can glean for Evans' "rush to the courthouse," knowing of Edwards' intention to seek to have the award vacated is to pressure Edwards to rashly rush to oppose confirmation, thus increasing Edwards' costs and decreasing its analysis time - possibly in an attempt to preempt Edwards' intended filing. Such is clearly an improper motive and is made all the more so by Evans' acknowledgment of its knowledge of Edwards' intention. Certainly, the three (3) month notice provision of 9 U.S.C. § 12 would be meaningless if a party could effectively shorten it at will by filing and having heard the prescribed motion to enforce prior to its expiration. Compare <u>Corey v. NYSE</u>, 691 F.2d 1205, 1213 (6 Cir. 1982).

Obviously, the ninety (90) day period serves two objectives: first, it affords the parties time to analyze and "digest" the award to determine its legitimacy and validity as well as its ramifications so that neither party will rush to move to vacate or to enforce until both have a true understanding of the award and all of its facets; second, it limits the time in which this analysis must be completed so that the "finality" of the arbitration and award will not be unduly delayed. This dual purpose will be disserved if the present rush to enforcement is permitted. And, certainly, ninety (90) unfettered days to consider is not a long time period when one takes notice of the significant quantum awarded, the bases forwarded by the panel for the award, and the great burden faced by parties seeking to vacate such awards, as the authorities cited in Evans' present motion papers demonstrate.[1]

---

[1] The great deference accorded arbitration awards, however, is not the equivalent of a grant of limitless power. The arbitrator may not shield an outlandish disposition from judicial review simply by making the right noises - noises of contract interpretation. Likewise, he may not dispense his own brand of industrial justice. This rule applies not only to the arbitrator's substantive findings, but also his choice of remedies. He may not impose a remedy which directly contradicts the express language of the contract. See <u>Leed Architectural Products v. United Steelworkers</u>, 916 Fed 63, 65 (2nd Cir., 1990), citations and quotation marks omitted. See also <u>First Option v. KaPlan</u>, 514 U.S. 938, 115 S.Ct. 1920, 1925, 131 L.Ed. 2d 985 (1995) - The basic objective of arbitration is to ensure that commercial arbitration

Just as obviously, this should not be the time or the procedural mechanism for Edwards to argue the relative merit or shortcomings of the arbitration award. That time should have been after both parties to the arbitration have taken sufficient time to consider the award, up to the mandated ninety (90) days, by way of a motion to set aside the award during that time or a motion to enforce the award brought thereafter; but will, in light of the Court's recent ruling on Edwards' continuance motion, be by way of Edwards' Motion to Vacate to be filed contemporaneously herewith, which Motion and Exhibits and Memorandum filed in Support thereof are adopted and incorporated herein by reference as if copied *in extenso*. (J.D. Edwards files its Motion to Vacate at the present time to satisfy the Court's Order requiring it to do so. J.D. Edwards, however, request and reserves the right to supplement its Motion to Vacate until the expiration of the Congressionally-mandated 90-day deadline to file it. J.D. Edwards counsel in the Evans Arbitration have been in an unrelated arbitration in Boston, Massachusetts since January 12, 2004, and expect to be in engaged in that arbitration for the next two to three weeks. As such, J.D. Edwards counsel who litigated the Evans matter were not able to be directly involved in the preparation or review of J.D. Edwards' Motion to Vacate or the Supporting Memorandum).

Having taken this position, out of an abundance of caution in the face of Evans' Motion, Edwards points out that the arbitration award (Exhibit "E" to Evans' Motion ) is, at best, logically inconsistent with, rather than having "drawn its essence from" the

---

agreements "are enforced according to their terms and according to the intentions of the parties" (citations omitted). See finally <u>Bob Schultz Motors, Inc. v. Kawasaki Motors Corp.</u>, 334 F.3d 721 (8 Cir. 2003)- congressionally-mandated deference to arbitration proceedings means that district court must take award as it finds it and either vacate entire award under Federal Arbitration Act or modify award pursuant to Act, although deference owed by reviewing court to arbitrators is not the equivalent nor encouraged simply to rubber stamp the interpretations and decisions of arbitrators. 9 U.S.C.A. §§ 10,11.

Evans/Edwards contract, as the authorities cited in Evans' supporting memorandum (p. 3) clearly require in order to place such an award on a virtually untouchable pedestal as Evans wishes this Court to do now. By way of examples only, at p. 2 of the award, the arbitrators charge the amount paid to IBM to implement the software, to Edwards, despite later recognizing that IBM was not a party to the arbitration and that litigation brought by Evans against IBM remains pending. Moreover, the arbitrators disregarded the fully negotiated "Exclusive Remedies" provision of the Evans/Edwards contract (Award, also at p. 2) and yet, selectively enforced other provisions of the contract against Edwards. Those and other blatant shortcomings of the Award are discussed in much greater detail in Edwards' contemporaneously-filed Motion to Vacate. However, suffice it to say that certainly, just as courts, as a matter of law, cannot rewrite clear and unambiguous contract provisions that are not against law or public policy (see, by way of examples only, <u>Shelter Mutual Ins. Co. v. Williams</u>, 9 S.W.3d 545 (Ark. App. 1 Dist. 2000); <u>Ducks & Ducks, Inc. v. Drainage District #7</u>, 2003 WL21418501 (Ark. App. 2 Dist. 2003); <u>Allstate v. Huizar</u>, 52 P.3d 816 (Colo. 2002); <u>Horne Engineering v. Kaiser Hill</u>, 72 P.3d 451 (Colo. App. 4 Dist. 2003); <u>Lake Durango Water Co. v. Public Utilities</u>, 67 P.3d (Colo. 2003)) so should an arbitration panel be unable to use the guise of "interpretation" to thwart the intention of the parties to a contract, especially where, as here, those parties are experienced business persons expecting to have their contract enforced as written. It was enforcement of the contract which allowed the arbitration in the first place. See <u>Bruce Hardwood Floors v. UBC, Industries</u>, 103F3d 449, 452 (5th Cir. 1997): Where arbitrator exceeds the express limitations of his contractual mandate, judicial defense [to arbitration awards] ends and vacature or modification of the award is the appropriate remedy.

As well said by the United States Supreme Court in <u>United Paperworkers v. Misco</u>, 484 U.S. 29, 38; 108 S.Ct. 364, 371 (1987) (cited at p. 3 of Mover's memorandum):

> The arbitrator may not ignore the plain language of the contract ... [t]he arbitrator's award settling a dispute ... must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice.

Or, as further aptly stated by the Second Circuit in <u>Harry Hoffman Printing v. Local 261</u>, 950 F.2d 95, 98 and 99 (2 Cir. 1991):

> Where it is clear that the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference), the arbitral award cannot stand.
>
> * * *
>
> Here it is unmistakable that, in reaching its decision, the Panel did not merely misapply principles of contractual interpretation or misinterpret the [contract], but drew upon a concept upon which it was not entitled to rely.
>
> * * *
>
> Thus, we conclude that the arbitral decision is not based on express or properly implied terms, but rather was improperly based upon the Panel member's particular notions of industrial justice. See <u>St. Louis Theatrical Co. v St. Louis Theatrical Bd.</u>, 715 F.2d 405, 409 (8 Cir. 1983) (award vacated where arbitrator's opinion reflected ... [his] efforts to balance the equities of the situation, rather than to interpret and apply the agreement). [Quotation marks omitted].

Based on the foregoing, Evans Industries, Inc.'s motion to confirm arbitration award and enter judgment thereon should, at this time, be denied without prejudice to Evans' ability to re-file such motion should Edwards fail to timely seek to have the arbitration award set aside in accordance with and/or pursuant to 9 U.S.C. § 12. Moreover, the brief discussion of the merits (or lack thereof) of Evans' Motion as

heretofore set forth by Edwards demonstrates that Evans' Motion, and the arbitrator's award, are meritless as a matter of law and unworthy of consideration or enforcement. Thus, as a matter of law, Evans' Motion should, in any event, be denied.

Respectfully submitted,

**HAILEY, McNAMARA, HALL, LARMANN & PAPALE, L.L.P.**

By: _____
W. EVAN PLAUCHÉ, ESQ. (LSBA#21027)
JOSEPH L. SPILMAN, III (LSBA#17813)
One Galleria Blvd., Suite 1400
P.O. Box 8288
Metairie, Louisiana  70011-8288
Telephone:  (504) 836-6500

**and**

Stephen J. Baity
Alan T. Dickey
**GODIN & BAITY**
Independence Plaza
1050 Seventeenth Street, Suite 1610
Denver, Colorado  80265
Attorneys for
J.D. Edwards World Solutions Company

### CERTIFICATE OF SERVICE

I do hereby certify that I have on this 20 day of JAN           , 2004, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by mailing the same by United States Mail, properly addressed, and first class postage prepaid and/or by facsimile service.

_____